# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-01062-SCT

*PAUL CLARK VALMAIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/2007 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/02/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Paul Clark Valmain was convicted in the Neshoba County Circuit Court on one count of sexual battery for sexual penetration of a five-year-old girl by inserting his fingers into her vagina, in violation of Mississippi Code Annotated Section 97-3-95(1)(d) (Rev. 2006). Valmain was sentenced to serve a term of twenty-five years in the custody of the Mississippi Department of Corrections.  Valmain appeals his conviction, raising four assignments of error:

(1) the trial court erred in overruling a hearsay objection to the testimony of a nurse;

(2) the trial court erred in allowing the five-year-old victim to testify;

(3) the trial court erred in allowing a seven-year-old witness to testify; and

(4) the verdict was against the overwhelming weight of the evidence.

Finding no merit in these assignments of error, this Court affirms.

**FACTS**

¶2.     Christy Allen lived with her son and daughter at her mother's home in Philadelphia. On October 14, 2006, while she went out for the evening, Allen asked Valmain to take care of her six-year-old son, D.F., and her five-year-old daughter, C.A. Allen took the children to Valmain's trailer around 3:30 p.m., and the children were to stay the night at Valmain's. Allen had left the children with Valmain on prior occasions, but never to stay the night.

¶3.     The children played outside until dinnertime, at which time Valmain took the children to the casino for dinner and arcade games. As they were leaving the casino, C.A. told Valmain that she had wet herself. On the way back to his home, Valmain took the children to Wal-Mart, where he purchased pajamas and panties for C.A.

¶4.     Valmain then took the children back to his trailer and took C.A. into the bathroom. He directed C.A. to undress herself and proceeded to bathe her with a bath cloth, while she stood in front of the sink. C.A. testified that, during the bathing, Valmain put his fingers through holes in the bath cloth and placed his fingers in her "private parts."[1] D.F. testified

---

[1] The trial court noted "the witness has pointed to a spot between her legs where it's connected to her upper torso, which would be the area of the vagina."

2

that he entered the bathroom and saw Valmain touching his naked sister "in her private parts"[2] through the holes in the bath cloth.  At trial, both C.A. and D.F. identified Valmain during their testimony.

¶5.    Allen testified that after staying the night with Valmain, C.A. was whiny, kept urinating on herself, and did not want males to touch her.  Allen went to Dusty Brown, a counselor at C.A.'s school, for advice.  Brown interviewed C.A., and as a result, contacted Mary Judon of the Department of Human Services.  C.A. was taken by her mother on October 17, 2006, to Rush Foundation Hospital in Meridian, where she was examined by Shalotta Sharp, a registered nurse and sexual-assault examiner.  A final interview of C.A. was conducted on October 20, 2006, by Carla Horne, forensic interviewer and counselor at Wesley House in Meridian.

¶6.    Nurse Sharp testified that her examination revealed two V-shaped clefts in the hymen, along with irritation and reddening of the labia minora, vestibule, and hymen.  Nurse Sharp further testified that these conditions were caused by some type of trauma to the area, possibly penetration of the area by fingers, and were not likely caused by the child herself.

¶7.    Valmain testified that he did give C.A. a bath with a washcloth, during which he wiped down her face, chest, arms, legs, and vaginal area.  Valmain maintained that there were no holes in the washcloth and that he did not do anything other than what was reasonable to bathe C.A.  Valmain testified that he had no idea why C.A. or anyone else would have concocted the story about the incident.

---

[2]The trial court noted "the witness has pointed to a spot between his legs which would be the area of the vagina of a female."

3

## PROCEDURAL HISTORY

¶8.     Paul Clark Valmain was indicted on one count of sexual battery. Following a trial and a jury verdict of guilty, Valmain was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections. Valmain now appeals to this Court, raising four assignments of error, listed *supra*.

## ANALYSIS

**I.  Whether the trial court erred in overruling Valmain's hearsay objection to the testimony of Nurse Sharp.**

¶9.     "This Court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review." *Smith v. State*, 986 So. 2d 290, 295 (Miss. 2008) (citations omitted). When reviewing a question of law, this Court employs a *de novo* standard of review. *DeLoach v. State*, 722 So. 2d 512, 518 (Miss. 1998) (citations omitted).

¶10.     Shalotta Sharp, R.N., was called by the state to testify. Sharp, a nurse and sexual-assault examiner from Rush Foundation Hospital in Meridian, testified as an expert in the field of sexual-assault examination.

¶11.     During direct examination, Sharp was asked to testify as to the medical history she had obtained with regard to C.A. Defense counsel objected,[3] and the court overruled the objection and allowed Sharp to testify, on the basis that a medical history is an exception to the hearsay rule. Sharp then testified as follows:

> A.     The patient presented with the mother stating that she had been babysat by a neighbor, and upon coming home from this neighbor, complained

---

[3]Defense counsel's specific objection was "Your Honor, I object to what the mother told her."

of a genital pain. The mother questioned the child – I'm sorry. The school counselor, the child had revealed to the school counselor that she had been touched inappropriately, and the mother had stated that the child had genital pain and some behavior changes and that DHS was contacted and she was referred for an exam.

Q. Did the history also determine or advise you as to who this neighbor was?

A. Yes.

Q. And who was the neighbor?

A. Paul Valmain.

¶12. Valmain asserts on appeal that the trial court erred in allowing Allen's out-of-court statements to Nurse Sharp as statements made for the purposes of medical diagnosis and treatment under Mississippi Rule of Evidence 803(4). Valmain contends that the medical-history exception to the hearsay rule does not extend to statements naming the perpetrator of a sexual battery who does not reside in the same household as the victim. Valmain argues, alternatively, that the medical-history exception does not apply to Allen's statement regarding the victim's history, because Allen was not the patient.

**A. Whether statements made by one other than the patient may fall under the exception.**

¶13. Valmain asserts that Mississippi Rule of Evidence 803(4) does not apply, because the declarant who gave the medical history was the mother of the victim, not the victim herself. Whether statements made by one other than the patient are covered by Rule 803(4) is an issue of first impression for this Court. Mississippi Rule of Evidence 803(4) provides an exception to the hearsay rule for:

[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court,

5

in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness . . . .

Miss. R. Evid. 803(4).

¶14.    First, we note that nothing in the plain language of Rule 803(4) restricts its application to statements made by the patient to a treating physician. To the contrary, we find that Rule 803(4) "casts its net wider than the patient-physician relationship." *In re B.R.*, 708 N.W.2d 586, 591 (Neb. 2005).

¶15.    Our finding is supported by a majority of the state and federal courts which have addressed the question. The Ninth Circuit Court of Appeals has held that "in most circumstances, we believe that statements to a doctor by a parent of an injured child could easily qualify as a statement for the purpose of obtaining a proper medical diagnosis." *United States v. Yazzie*, 59 F.3d 807, 813 (9th Cir. 1995). The Supreme Court of Nebraska has stated that "[u]nder the federal and Nebraska rules of evidence, statements admissible under the medical diagnosis and treatment exception are not restricted to statements made by the patient and the statements need not be made to a physician." *In re B.R.*, 708 N.W. 2d at 591 (citing *Vacanti v. Master Electronics Corp.*, 514 N.W.2d 319 (Neb. 1994)). The court went on to hold that the declarant need not be the patient, finding that a foster mother's statements made to a therapist, regarding the condition of her foster son, were not precluded from admissibility under Nebraska Revised Statute Section 27-803(3). *Id.* The Fifth Circuit Court of Appeals has noted that the rule "does not always require that the out-of-court statements refer to the condition of the declarant." *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 272 (5th Cir. 1991). The fact that information obtained via a medical history

comes from the patient's mother "does not affect the admissibility of the statements therein." ***Sandoval v. State of Texas***, 52 S.W.3d 851, 857 (Tex. Crim. App. 2001).

¶16.    The underlying principle of the Rule 803(4) hearsay exception is that statements made to physicians are highly likely to be truthful.  The reliability of those statements "is assured by the likelihood that the patient believes that the effectiveness of the treatment depends on the accuracy of the information provided to the doctor, which may be termed a 'selfish treatment motivation.'"  Broun, *et al.*, McCormick on Evidence 2 § 277, 284 (6th ed. 2006).

¶17.    It is not uncommon for parents to relay the medical histories of their children to physicians for diagnostic and treatment purposes.  "In some circumstances where a parent is giving the information to assist in the diagnosis and treatment of the child, we think the reliability of the statements is very high."  ***Sandoval v. State of Texas***, 52 S.W.3d at 857. Indeed, parents have the same 'selfish treatment motivation' when providing information about their child to a physician for diagnosis or treatment as they would if providing information for their own diagnosis or treatment.  Accordingly, we find that the trial court did not abuse its discretion in admitting the mother's statements made to the nurse who was examining her child.

**B. Whether a statement identifying the perpetrator may fall under the exception.**

¶18.    This Court has applied a two-part test for determining whether a statement indicating fault can qualify as an exception under Mississippi Rule of Evidence 803(4). ***Jones v. State***, 606 So. 2d 1051 (Miss. 1992).  "First, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the

7

statement must be such as is reasonably relied on by a physician in treatment." *Id.* at 1056 (citing *U.S. v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985)).

¶19.    This Court has held that "the identity of the child's sexual abuser was pertinent to treatment, therefore reasonably relied upon by the treating physician, although the perpetrator was not a member of the child's household." *Hennington v. State*, 702 So. 2d 403, 413 (Miss. 1997) (citing *Doe v. Doe*, 644 So. 2d 1199 (Miss. 1994)).

¶20.    In *Hennington*, this Court took the opportunity to "set forth definite guidelines regarding the admission of hearsay testimony under Miss. R. Evid. 803(4) as to the identification of the perpetrator in a sexual abuse case." *Id.* at 414.   Noting that "the paramount concern in treatment of sexual abuse is to ensure that a child is not returned to the environment that fostered, allowed, or permitted the abuse," this Court held:

> [H]earsay testimony identifying the perpetrator is admissible under Miss. R. Evid. 803(4) regardless of whether he or she is a member of the child's immediate household.  The overriding question making the inquiry necessary is, "Will the perpetrator have access to the child in the future that would allow the sexual abuse to continue?"  Because the inquiry is necessary for treatment, the answer is admissible under the rule.

*Id.* at 415.

¶21.    Although Valmain was not an immediate family member living in the same home as C.A., the record shows that he saw the victim and her brother "pretty much on a daily basis."  The record reveals that Valmain visited the children's home often, helping bathe and dress the children.  Allen testified that Valmain was a friend and that she had left the children with him on other occasions.  Valmain testified that he was a part of the kids' lives.  In *Hennington*, this Court noted that "although the perpetrator was not an immediate family

8

member living in the same home as the child, the record shows that Hennington frequented the home of the child." *Id.* at 415. The same certainly can be said for Valmain. Because he would have access to the child in the future that would allow the sexual abuse to continue, this Court finds that the identification of Valmain was admissible under Mississippi Rule of Evidence 803(4).

**II. Whether the court erred in allowing the victim and her brother to testify.**

¶22. Valmain challenges the court's ruling allowing C.A. and her brother to testify, asserting that their testimony failed to establish that they understood the meaning of truthfulness.

¶23. Mississippi Rule of Evidence 601 governs the competency of witnesses, providing that every person is competent to be a witness unless incompetent or otherwise restricted by rule. The competency of a child witness is in the sound discretion of the trial judge. *Mohr v. State*, 584 So. 2d 426, 431 (Miss. 1991).

¶24. This Court generally has allowed children of tender years to testify, so long as they are deemed competent. *Id*. "Before allowing the child to testify, the judge should determine 'that the child has the ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness.'" *Id*. at 431 (quoting *House v. State*, 445 So. 2d 815, 827 (Miss. 1984)).

## A. The testimony of C.A.

¶25. Before allowing the victim to testify, the court held a competency hearing outside the presence of the jury. C.A. testified that she knew the difference between telling the truth and telling a story, and she knew that she was supposed to tell the truth. During the hearing, the prosecutor examined C.A. concerning the facts and circumstances surrounding the case. After the hearing, the trial court made the following finding regarding C.A.'s competency to testify:

> The child is five years old and is an intelligent child for five years old. She understood the questions of Mr. Brooks and her responses were immediate and prompt. Then the child testified as to the conduct of this Defendant without being prompted or urged in any way. There was no suggestion made by the questions of Mr. Brooks, so I feel like that even though she is five years old, she has considerable reliability.

C.A.'s testimony regarding the sexual assault and the surrounding events was consistent in both the hearing and before the jury. Before the jury, C.A. reiterated that she knew what it meant to tell the truth, going so far as stating that if you don't tell the truth, you "go to jail."

¶26. Throughout her testimony, C.A. proved that she was intelligent, had the ability to understand and answer questions, and understood the importance of truthfulness. For these reasons, this Court finds that the trial court did not err in allowing C.A. to testify.

## B. The testimony of D.F.

¶27. The court also held a competency hearing outside the presence of the jury before allowing D.F. to testify. During the hearing, D.F., seven years old, testified that he knew the difference between telling the truth and not telling the truth, stating that you can get in trouble for not telling the truth. D.F. testified that he would tell the truth. D.F. also was

10

questioned about what he had observed in Valmain's bathroom on the night in question. After the hearing, the trial court made the same finding with D.F. as with C.A., stating:

> I am of the opinion that his testimony has the indicia of credibility. Considering his age, considering his intelligence and his demeanor, it appears that he is very understanding and is well mature and developed for a seven year old; that he understands the proceeding; he understands the penalty for falsehood and he is willing to testify as to the truth.

¶28. A study of D.F.'s testimony clearly shows that he was intelligent, that he had the ability to understand and answer questions, and that he understood the importance of truthfulness. Further, D.F.'s testimony was consistent in both the competency hearing and in his testimony before the jury. We find, therefore, that the trial court did not abuse its discretion in permitting D.F. to testify.

**III. Whether the verdict was against the overwhelming weight of the evidence.**

¶29. Finally, Valmain argues that the guilty verdict returned by the jury is against the overwhelming weight of the evidence, and therefore, the verdict should be overturned. Valmain asserts that the evidence presented could not have supported a finding that the prosecution had proven the elements of the offense charged beyond a reasonable doubt.

¶30. The standard of review applied to claims that a conviction is against the overwhelming weight of the evidence is as follows:

> [This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.

*Todd v. State*, 806 So. 2d 1086, 1090 (Miss. 2001). "There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some

11

reversible error to this Court." ***King v. State***, 857 So. 2d 702, 731 (Miss. 2003) (citing ***Branch v. State***, 347 So. 2d 957, 958 (Miss. 1977)).

¶31.   A review of the record reveals that evidence supporting the jury's verdict was presented throughout the trial. The victim testified that Valmain put his fingers in her private parts. The testimony was corroborated by the victim's brother, who witnessed the incident. The victim and her brother both identified Valmain in court. The victim's testimony was further corroborated by Nurse Sharp, who described the injuries to the victim's hymen as being consistent with injuries due to trauma and penetration. The victim's mother testified as to the changes she observed in the victim's physical and psychological condition after her overnight visit at Valmain's trailer.

¶32.   On the witness stand, Valmain denied penetrating C.A.'s vagina. This testimony, however, merely created an issue of fact for the jury to resolve. "The jury is the sole judge of the weight of the evidence and the credibility of the witnesses." ***Mohr v. State***, 584 So. 2d 426, 431 (Miss. 1991).

¶33.   This Court finds that the circuit court did not err in denying Valmain's motion for a new trial, as the verdict was not so contrary to the overwhelming weight of the evidence as to sanction unconscionable injustice.

## CONCLUSION

¶34.   Finding that Valmain's arguments are without merit, we affirm the verdict and sentence of the Circuit Court of Neshoba County.

¶35.   **CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶36. Because I cannot embrace this case's extension of our well-established hearsay exceptions, I respectfully dissent from today's decision.

¶37. "The hearsay rule and its exceptions effect a delicate balance between the twin towering goals of the trial process: truth and fairness." *Hall v. State*, 539 So. 2d 1338, 1346 (Miss. 1989). All exceptions to the general prohibition against hearsay, no matter their foundations, strain against the goal of fairness. The application of a hearsay exception in a criminal case, by its very nature, is a state-sanctioned abrogation of the right to confrontation guaranteed by the Sixth Amendment and Article 3, Section 26, of the Mississippi Constitution. *See Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Therefore, whenever this Court condones hearsay, we ought to do so with the highest possible degree of care and thoughtfulness.

¶38. I do not suggest that today's majority is proceeding otherwise. To the contrary, the majority reaches its conclusion only after a thoughtful analysis, supported by careful legal reasoning and persuasive authority from a diverse sample of jurisdictions.

¶39. Still, I cannot concur with its conclusion. By holding that Mississippi Rule of Evidence 803(4) permits a witness to testify to hearsay statements attributed to a child, delivered to the witness by a parent, the majority has added a new link to the hearsay chain that the courts of this state must accept and apply. If the reliability of hearsay evidence, as

13

the eminent Chief Justice John Marshall wrote nearly two centuries ago, by its very nature suffers an "intrinsic weakness," ***Queen v. Hepburn***, 11 U.S. 290, 296, 3 L. Ed. 348, 7 Cranch 290 (1813), then the brand of secondhand hearsay permitted by today's decision is afflicted by even less reliability than traditional hearsay. Indeed, given that none of our heretofore-recognized hearsay exceptions appears to contemplate secondhand hearsay, *see* Mississippi Rule of Evidence 803(1-25), today's decision introduces to Mississippi's jurisprudence the least reliable testimony permitted by the Rules of Evidence.

¶40.    I understand that Rule 803(4) is written in broad language that does not explicitly limit its scope to statements uttered by a medical patient. But Rule 803(4)'s attention to "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof" clearly implies that this hearsay exception sets its limits at statements imparted by the person experiencing the described symptoms, pain, or sensations. Therefore, I would hold that the learned trial judge committed reversible error when he permitted Nurse Sharp to testify to statements supposedly uttered by the child but conveyed to the nurse by the mother.

¶41.    Moreover, the record in this case makes clear that the majority need not stretch Rule 803(4) as far as it does. The Rules of Evidence, as they were generally understood before today's decision, forbade neither the nurse (through the medical-diagnosis exception) nor the mother (through Rule 803(25)'s tender-years exception) from testifying to statements made by the child.[4] Furthermore, they did not forbid the nurse from testifying to the observations

---

[4] This is so despite the U.S. Supreme Court's holding in ***Crawford***, 541 U.S. 36, because the child testified at trial. Had she not done so, the admission of this evidence would have violated the defendant's right to confront his accuser, as Justice Scalia's

she made during her examination, because such evidence clearly is not a statement and therefore is not hearsay. *See* Miss. R. Evid. 801. Accordingly, the State's case would not have suffered from the absence of the testimony in question.

¶42.    Instead, today's decision visits suffering upon the state and federal right to confrontation. Therefore, I dissent.

**CHANDLER, J., JOINS THIS OPINION.**

---

majority opinion in ***Crawford*** makes clear.