# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01155-SCT

*TOMMY WHITE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/18/2009 |
| TRIAL JUDGE: | HON. JAMES McCLURE, III |
| COURT FROM WHICH APPEALED: | YALOBUSHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: HUNTER N. AIKENS |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/19/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. Tommy White appeals his conviction of possession of a firearm by a convicted felon, correctly claiming the trial judge erroneously allowed hearsay into evidence. But the error was harmless, so we affirm.

## BACKGROUND

¶2. White got into an argument with Tony Buckley, who was sitting in a parked car with Roger Smith near B.J.'s Corner Store in Oakland, Mississippi. Afterwards, Buckley and White went to their respective homes.

¶3.    Amanda Anderson was Buckley's live-in girlfriend and Amanda's sister, Latoya Anderson, is White's niece.  Later that night, Latoya called Amanda, who was at Buckley's house, to say that White had armed himself with a baseball bat and a shotgun and was on his way over.  About five minutes later, White showed up at Buckley's house and walked around it three times.  Both Buckley and Amanda testified White was wearing "something" with long sleeves and "something" was sticking out of his sleeve.  Amanda left to walk to the nearby Oakland Town Hall to get the police.  As she was leaving, she overheard White threaten to shoot Buckley.

¶4.    By the time Oakland Police Chief Russ Smith and Officer Paul Thomas responded, it was dark outside.  Officer Thomas and Chief Smith spotted White (who was known to them) one street over from Buckley's residence in front of Denise Bradford's house. Officer Thomas exited his police cruiser and asked White to come over and talk to them.  After hesitating for a moment, White fled.  Officer Thomas and Chief Smith pursued him on foot.

¶5.    White fell in a driveway, and Chief Smith saw a shotgun fall out of his hand. Officer Thomas did not see the shotgun but heard something hit the ground which sounded like a weapon. When Chief Smith saw White pick up the shotgun and continue running, he took the lead in the pursuit while Officer Thomas stopped and drew his weapon.  The pursuit continued around the side of a house, where Chief Smith caught White and wrestled the shotgun away from him. The shotgun fell to the ground, and White broke free and continued running.

¶6. The police soon apprehended White in a nearby yard and found shotgun shells in his pockets. A sawed-off shotgun was recovered on the ground near the location of the initial struggle between White and Chief Smith.

¶7. White was indicted for possession of a firearm by a convicted felon. The trial judge – over White's hearsay objection – allowed both Amanda and Buckley to testify as to the content of the telephone call from Latoya. White was convicted, and the trial court adjudged him a habitual offender and sentenced him to serve a term of ten years in the custody of the Mississippi Department of Corrections. White again raised the hearsay issue in a motion for a new trial. In denying the motion, the trial court found that, even if Amanda's testimony was hearsay, "in light of the facts presented in this case, it was harmless error."

¶8. White now appeals, claiming the trial court committed reversible error in allowing the hearsay into evidence. White also claims his conviction was against the overwhelming weight of the evidence.

## ANALYSIS

¶9. We employ an abuse-of-discretion standard[1] when reviewing claims that the trial judge erred by admitting hearsay.

*Latoya's Statements Were Inadmissible Hearsay.*

¶10. During Buckley's direct examination, the following exchange occurred:

Q: Okay. And at some point in time did you receive a phone call or Amanda receive a phone call?
A: Yes
Q: And who called?
A: His niece?

---

[1] *Valmain v. State*, 5 So. 3d 1079, 1082 (Miss. 2009).

3

Q:      Is she any kin to Amanda?

A:      That's her sister.

Q:      So Tommy would also be Amanda's niece – or Amanda would also be Tommy's niece; is that right?

A:      No. This is his niece by her daddy.

Q:      I got you. And what did the niece tell ya'll?

DEFENSE:          Your Honor, I'm going to object to hearsay.

STATE:            Excited utterance, present sense impression.

DEFENSE:          I still object. It's a hearsay statement, Your Honor.

STATE:            The witness is allowed if they were advised of a – 803(1) or 803(2) present sense impression or excited utterance is the exception that we're using to hearsay.

THE COURT:        I'm going to overrule the objection.

Q:      What did she tell y'all?

A:      That he came home and got a baseball bat and a shotgun and was coming back around there to my house.

¶11.    During the State's direct examination of Amanda, the following exchange occurred:

Q:      After he got back, did you receive a phone call?

A:      Yes

Q:      Who did you receive a phone call from?

A:      My Sister, Latoya

Q:      And what did she tell you?

DEFENSE:   Your Honor, we would have the same objection, hearsay, that we had previously.

THE COURT:        All right. Response?

STATE:            Same response. Same excited utterance, present sense impression.

THE COURT:        I'm going to sustain the objection.

STATE:            It's already before the jury, Your honor.

THE COURT:        That was what she said to [Buckley].

STATE:            The conversation was between her and her sister.

THE COURT:        Okay. That being the case, I'm going to overrule the objection and allow the question to be answer[ed].

Q:      Did your sister call you concerning Tommy White?

A:      Yes.

Q:      And what did she tell you?

A:      She called me. And when she called me I answered the phone, and she told me about the dispute, that she got a call up from where he stay at, you know, that they had some words.

DEFENSE: Your Honor, I'm going to renew this objection. If I'm understanding correctly, it's becoming double hearsay. Am I missing [sic]?

STATE: I don't think she went into the text of the conversation to make it double hearsay. She's telling – I can rephrase it to make it more direct.

THE COURT: I'm going to sustain the objection. Why don't you rephrase it?

Q: Did she tell you to beware of Tommy White?

A: Yes.

. . .

Q: What did she tell you about Tommy?

A: That she got a phone call from up where he stay at.

Q: All right. Don't get into that.

A: Okay.

Q: What did she tell you that Tommy was going to do?

A: Was going to come over there and shoot. That's what she told me.

Q: Did she advise you whether or not he had any kind of weapons?

A: Yes, she advised me.

Q: And did she tell you where he was going with the bat and the gun?

A: Our way, 424 Persimmon.

¶12. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"[2] According to our rules, "[h]earsay is not admissible except as provided by law."[3]

¶13. Both Buckley's and Amanda's testimony regarding the phone call from Latoya clearly contained hearsay. And from the combined testimony of Buckley and Amanda, it can be gleaned that some unidentified person from White's residence informed Latoya about White's actions and what he intended to do. Because Latoya's statements were based on information conveyed to her by some unidentified person, the statements were hearsay within

---

[2]M.R.E. 801(c).

[3]M.R.E. 802.

hearsay, which is inadmissable unless "each part of the combined statements conforms with one of the numerous exceptions to the rule against hearsay."[4]

¶14.    The State argues that Latoya's statements qualify under the "present-sense impression" exception, which says:

> [a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.[5]

¶15.    The State also argues the statements qualify for the "excited utterance" exception which says:

> Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.[6]

¶16.    The State admits that no testimony was introduced demonstrating that any of the statements were made "while the declarant was perceiving the event or condition or immediately thereafter, as required for the present-sense impression exception."[7] The State also admits there was no evidence the statements "relat[ed] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," as required for the excited-utterance exception. The State's argument that both requirements can be assumed has no merit.

---

[4]M.R.E. 805.

[5]M.R.E. 803(1).

[6]M.R.E. 803(2).

[7]M.R.E. 803(1).

¶17.   The State also argues that any error in the introduction of this testimony was harmless error.  We agree.  We deem errors harmless if "the same result would have been reached had they not existed."[8]

¶18.   It was error for the trial judge to allow Latoya's hearsay testimony.  But Buckley and Amanda both saw "something" sticking out of White's sleeve.  Chief Smith saw the shotgun in White's possession and disarmed him.   The shotgun was recovered where the struggle between White and Chief Smith took place, and  shotgun shells were found on White's person.  Given the weight of this considerable evidence that White had possessed a firearm, we find the trial judge's error was harmless.

*The Conviction Was Not Contrary to the Overwhelming Weight of the Evidence.*

¶19.   White was charged with possession of a firearm by a convicted felon, which required the State to prove (1) possession of a firearm  (2) by one who has been convicted of a felony.[9]  There is no dispute that White was a convicted felon.  The sole issue at trial was whether White was in possession of a firearm.  As already stated, the State produced ample evidence on this issue.

¶20.   When we review a circuit court's decision to deny a motion for a new trial, we "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that

---

[8]*Tate v. State*, 912 So. 2d 919, 926 (quoting **Burnside v. State**,  882 So. 2d 212, 216 (Miss. 2004)).

[9]Miss. Code Ann. § 97-37-5(1) (Rev. 2006).

to allow it to stand would sanction an unconscionable injustice."[10] We have also said, when reviewing a trial court's decision to deny a motion for a new trial:

> the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.[11]

¶21. White testified at trial that he did not possess a gun. He also called Dantino and Denise Bradford, who testified they were standing near White when the police arrived and never saw a gun (although they admitted that it was getting dark and White was wearing a coat). White also called several relatives who, while not present during the incident, denied that White ever had a gun.

¶22. But as recited above, Chief Smith testified that he saw the shotgun in White's possession, disarmed him, and recovered the gun. Viewing this evidence in the light most favorable to the verdict, the verdict is not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."[12] Therefore, this argument has no merit.

---

[10]*Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005).

[11]*Id*. (footnote and internal citations and quotations omitted).

[12]*Id*.

**CONCLUSION**

¶23.    The trial court's admission of Buckley's and Amanda's hearsay evidence concerning the telephone call, while error, was harmless due to the weight of the other evidence of guilt adduced at trial.  For the same reason, the verdict was not against the overwhelming weight of the evidence.  We affirm the conviction and sentence in this case.

¶24.    **CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF TEN (10) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**