LEE, C.J.,
for the Court:
¶ 1. A Marion County Circuit Court jury convicted Derek Scott Pittman of statutory rape in violation of Mississippi Code Anno *601 tated section 97-3-65(l)(a) (Supp.2002). Pittman now appeals, arguing (1) the trial court erred by allowing hearsay statements during the testimony of Nurse Tan-ga Stuart; (2) the trial court erred by allowing hearsay statements during the testimony of Officer Adrien Fortenberry; and (8) the verdict is contrary to the sufficiency and weight of the evidence.
FACTS AND PROCEDURAL HISTORY
¶ 2. On October 19, 2004, Rebecca[1] entered her daughter’s bedroom and saw her husband, Derek Scott Pittman, having sexual intercourse with their daughter, Emma. Neither Pittman nor Emma saw Rebecca. She backed out of the room and returned to bed. The next morning Rebecca took Emma to the Wesley Medical Center, where Rebecca informed the nurse that she had witnessed her husband having intercourse with Emma. Emma, who was fourteen years old at the time, confirmed that she had been having vaginal intercourse with her father on frequent occasions over the past year.
¶ 3. Emma and Rebecca both spoke to Officer Fortenberry of the Marion County Sheriff’s Department. Emma signed an affidavit attesting to the statutory rape, and Rebecca gave a written statement about her eyewitness account. Some time later, Emma and Rebecca sought to drop the charges against Pittman. The district attorney went forward with the prosecution without the cooperation of Emma or Rebecca.
¶ 4. At trial, the State subpoenaed Emma to testify. When asked about being examined at the Wesley Medical Center, Emma repeatedly stated that she did not remember. She also said she did not remember meeting with Officer Fortenberry or giving him a statement. The assistant district attorney showed Emma her affidavit and asked if she remembered signing it. Emma stated that it looked like her handwriting and her signature, but she did not remember writing it or signing it. Although she responded to questions by stating that she did not remember or did not know, she never contradicted her previous statements that her father had raped her.
¶ 5. When Rebecca testified at trial, she contended that she had taken Emma to the hospital “[t]o see if she [had] been having any sexual intercourse....” Although she remembered speaking to Officer Fortenberry, she repeatedly said that despite attesting to seeing her husband having sexual intercourse with her daughter, she could not “say that [she] saw that.” When the assistant district attorney questioned her again about taking Emma to the hospital, Rebecca said, “I’ve already made those statements. I don’t recall.” Rebecca began to contradict her prior testimony. In an attempt to clarify, the assistant district attorney asked Rebecca if she had gone to work or if she went to the hospital. She stated she had gone to work and then to the hospital, and then declared, “I’m about done.”
¶ 6. Pittman did not testify, nor did he present any evidence. The jury found Pittman guilty of statutory rape. He was sentenced to fifteen years, with seven years to serve in the custody of the Mississippi Department of Corrections, and eight years to serve under the post-release provisions with a five-year supervision period. This appeal followed.
DISCUSSION
I. NURSE STUART’S TESTIMONY
¶ 7. This Court applies “an abuse-of-discretion standard when reviewing *602 claims that the trial judge erred by admitting hearsay.” White v. State, 48 So.3d 454, 456 (¶ 9) (Miss.2010) (citation omitted).
¶ 8. The State called Nurse Tanga Stuart, who examined Emma at the Wesley Medical Center, to testify. In anticipation of the State eliciting testimony regarding the statements Emma and Rebecca had made to Nurse Stuart, the defense objected to the statements as hearsay. The State argued that the statements were admissible because they fell under the medical-records exception of Mississippi Rule of Evidence 803(4). The trial court noted that the statements were admissible under several exceptions, including Mississippi Rules of Evidence 803(2) and 803(3); but it also noted that the statements were admissible because the statements spoke to the “medical condition as to their frame of mind.” When the State sought to have Emma’s medical chart from the examination admitted into evidence, Pittman’s counsel-again objected based on hearsay grounds. The court overruled the objection and admitted the records into evidence.
¶ 9. Pittman contends that the trial court committed reversible error by allowing the hearsay testimony and admitting the medical records into evidence. Pittman asserts that because the declarant of the information is unknown and the information cannot be completely attributed to Emma, the statements are inadmissible.
¶ 10. Rule 803(4) creates an exception to the hearsay rule for “[s]tatements made for the purpose of medical diagnosis or treatment and describing medical history....” Even though the language of the rule mandates that the declarant be the patient, the Mississippi Supreme Court has found that “Rule 803(4) casts its net wider than the patient-physician relationship.” Valmain v. State, 5 So.3d 1079, 1083 (¶ 14) (Miss.2009) (internal quotations omitted). Statements made for the purpose of a medical diagnosis are reliable because “the effectiveness of the treatment depends on the accuracy of the information provided to the doctor, which may be termed a ‘selfish treatment motivation.’” Id. at 1084 (¶ 16) (internal quotations omitted). This veracity does not change when the declarant is the parent of the patient because “parents have the same ‘selfish treatment motivation’ when providing information about their child to a physician for diagnosis or treatment as they would if providing information for their own diagnosis or treatment.” Id. at (¶ 17).
¶ 11. Therefore, whether Emma or her mother gave the statements contained within the medical report is not dispositive. Information obtained from either declarant for the purpose of receiving medical treatment is admissible.
¶ 12. Pittman also contends that the statements were not admissible because they were being used to prove fault. In order for a statement indicating fault to qualify under the exception of Rule 803(4), the statement must meet the two-part test set out in Jones v. State, 606 So.2d 1051 (Miss.1992). “First, the declarant’s motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment.” Id. at 1056. When the victim identifies someone in her household as her abuser, these statements are “reasonably pertinent to treatment and, consequently, reasonably relied upon by physicians in diagnosis and treatment.” Eakes v. State, 665 So.2d 852, 866 (Miss.1995).
¶ 13. Here, both Emma and Rebecca identified Pittman as the perpetrator. *603 Pittman is Emma’s biological father, who lived in the same home with her. Therefore, the statements are “reasonably pertinent to treatment” and “reasonably relied upon ... in diagnosis and treatment.” Id. This issue is without merit.
II. OFFICER FORTENBERRY’S TESTIMONY
¶ 14. Pittman asserts that the trial court erred by admitting hearsay testimony by Officer Fortenberry. Pittman fails to identify which particular statements were hearsay and fails to cite any law in support of his contention. This issue is without merit.
III. SUFFICIENCY AND/OR WEIGHT OF THE EVIDENCE
¶ 15. For the State to prove that Pittman committed statutory rape, it must show that: (1) Pittman was at least seventeen years old; (2) he had sexual intercourse with Emma; (3) Emma was between fourteen and sixteen years old; (4) Emma was thirty-six or more months younger than Pittman; and (5) Pittman was not Emma’s husband. Miss.Code Ann. § 97 — 8—65(l)(a).

A. Sufficiency of the Evidence

¶ 16. When the defendant moves for a judgment notwithstanding the verdict, he is challenging the sufficiency of the evidence and asking “the court to hold, as a matter of law, that the verdict may not stand.” Tait v. State, 669 So.2d 85, 88 (Miss.1996) (citing May v. State, 460 So.2d 778, 780-81 (Miss.1984)). The trial court then “must consider all of the evidence— not just the evidence which supports the State’s case — in the light most favorable to the State.” May, 460 So.2d at 781. “[T]his Court will reverse and render only if the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty[.]” Hughes v. State, 983 So.2d 270, 275-76 (¶ 10) (Miss.2008) (quoting Brown v. State, 965 So.2d 1023, 1030 (¶ 25) (Miss.2007) (quotation marks omitted)).
¶ 17. Emma stated to Nurse Stuart that she had been having intercourse with her father on numerous occasions for about a year. Additionally, Rebecca informed Nurse Stuart and Officer Fortenberry that she had witnessed her husband having intercourse with Emma. At the time of the report, Pittman was thirty-two years old and more than thirty-six months older than Emma, who was fourteen. And Pittman is not Emma’s spouse, as he is her father. From the evidence presented, reasonable jurors could have found beyond a reasonable doubt that Pittman was guilty of statutory rape. This issue is without merit.

B. Weight of the Evidence

¶ 18. In reviewing a verdict when an objection has been raised to the weight of the evidence, this Court views the evidence in the light most favorable to the verdict, and it “will only disturb [the] verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). If the weight of the evidence fails to meet that high threshold, then the verdict is not against the weight of the evidence. See id. “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Amiker v. Drugs for Less Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000).
*604 ¶ 19. Pittman asserts that the verdict is contrary to the weight of the evidence because there was no medical evidence of a sexual assault. Nurse Stuart testified that there were no abrasions, marks, or bruises or any evidence of vaginal tears that may have indicated rape. Additionally, no DNA evidence was produced from the rape kit. However, the jury was also presented evidence that could account for the lack of DNA evidence. According to the medical records, Emma stated Pittman “did not ejaculate last night as he was interrupted during the act.”
¶ 20. Although the medical evidence presented may have been minimal, the jury heard the statements Emma and Rebecca gave to Nurse Stuart and Officer Fortenberry. They heard Nurse Stuart testify that Emma told her that her father had been having intercourse with her on numerous occasions for about a year and that Rebecca had given an eyewitness account of the rape.
¶ 21. Viewing the evidence in the light most favorable to the verdict, it cannot be said that allowing the guilty verdict to stand would be “an unconscionable injustice.” This issue is without merit.
¶ 22. THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF FIFTEEN YEARS, WITH SEVEN YEARS TO SERVE, EIGHT YEARS SUSPENDED, AND EIGHT YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

. The names of the mother and the victim have been changed to protect their identities.