# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00614-COA

**CHARLIE RICARDO GRANT A/K/A CHARLIE GRANT A/K/A CHARLIE "CHUCK" GRANT**     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                         **APPELLEE**

DATE OF JUDGMENT:                09/24/2012
TRIAL JUDGE:                     HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:       RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          S. MALCOLM O. HARRISON
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: LADONNA C. HOLLAND
DISTRICT ATTORNEY:               MICHAEL GUEST
NATURE OF THE CASE:              CRIMINAL - FELONY
TRIAL COURT DISPOSITION:         CONVICTED OF TWO COUNTS OF
                                 SEXUAL BATTERY AND SENTENCED TO
                                 TWO CONCURRENT TERMS OF THIRTY
                                 YEARS IN THE CUSTODY OF THE
                                 MISSISSIPPI DEPARTMENT OF
                                 CORRECTIONS, WITH FIFTEEN YEARS
                                 SUSPENDED AND FIFTEEN YEARS TO
                                 SERVE, FOLLOWED BY FIFTEEN YEARS
                                 OF POSTRELEASE SUPERVISION
DISPOSITION:                     AFFIRMED - 03/15/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**JAMES, J., FOR THE COURT:**

¶1.     A jury sitting before the Rankin County Circuit Court found Charlie Ricardo Grant guilty of two counts of sexual battery. He claims the circuit court allowed the prosecution to introduce inadmissible evidence. But the circuit court did not abuse its discretion when

it allowed a nurse's hearsay testimony regarding statements the minor victim made during a medical examination. And we find no merit to Grant's claim that the prosecution should not have cross-examined him about his previous girlfriends to discredit his alibi witness. Finally, his challenges as to the sufficiency and weight of the evidence have no merit. Therefore, we affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. This case stems from Grant's interaction with N.M.[1] Grant was a frequent presence in N.M.'s house, where she lived with her mother, Grant's brother, and three siblings. Grant's brother and N.M.'s mother had two daughters together. Grant frequently took N.M. and/or her siblings on outings.

¶3. N.M. enjoyed being around Grant. She developed what some might describe as a schoolgirl crush. She later said that she fantasized about him. When N.M. was in the eighth grade, Grant began complimenting her hips. And he started touching her "butt" when he hugged her. Over time, his hands progressively lingered. When asked at trial whether she "took that to mean that [Grant] was making sexual advances toward" her, N.M. responded affirmatively. She responded similarly when asked whether she "want[ed] him to make sexual advances toward" her.

¶4. As of May 2011, Grant was thirty-one years old, and N.M. was fourteen. One weekend night, Grant took N.M. and her brother to see a late movie. After dropping them

---

[1] We substitute initials for the victim's name to protect her identity.

off at home, Grant later texted N.M. With her mother's consent, N.M. and Grant went to Waffle House. On the way there, N.M. grabbed Grant's thigh. Grant exposed his penis so she could touch it. After getting food to go, N.M. performed oral sex on Grant while riding in his truck. Grant eventually parked and performed oral sex on her. He later told her not to tell anyone.

¶5. Grant's inappropriate contact with N.M. came to light after she told one of her friends. N.M.'s mother confronted N.M. about some of her text messages, but N.M. denied that there was anything between her and Grant. But N.M.'s friend confessed to N.M.'s mother. N.M. then acquiesced and told her mother about her inappropriate contact with Grant.

¶6. N.M.'s mother filed a report at the Pearl Police Department. That led to a sequence of investigative events that will be discussed in detail as necessary in the analysis below. Eventually, Grant was charged with three counts of sexual battery. He pled not guilty and went to trial in July 2012.

¶7. Grant was ultimately convicted of two counts of sexual battery, and acquitted of the third. He appeals and claims the circuit court erred when it allowed the prosecution to elicit hearsay testimony and prejudicial testimony regarding his previous relationships. He also claims that there was insufficient evidence to support the jury's verdicts, and the verdicts were contrary to the overwhelming weight of the evidence.

**ANALYSIS**

**I.    Statements During the Medical Examination**

¶8. After N.M.'s mother filed a report with the Pearl Police Department, N.M. was taken to the Children's Justice Center at the University of Mississippi Medical Center for a routine medical examination. Nurse Practitioner Stacey Carter examined N.M. During the examination, N.M. told Carter that she performed oral sex on Grant and he reciprocated.

¶9. Grant filed a motion in limine to prevent Carter from testifying regarding N.M.'s statement during the examination. At the hearing on Grant's motion, Carter stated that N.M. told her that Grant "put his penis in her mouth . . . and also put his mouth in her vagina . . . ." Citing precedent allowing similar testimony under comparable circumstances, the circuit court denied Grant's motion.

¶10. The prosecution called Carter at trial, and she relayed the statement that N.M. made during the examination. According to Grant, the circuit court committed reversible error when it allowed Carter to present inadmissible hearsay testimony. We are mindful that the admission or exclusion of evidence is reviewed for abuse of discretion. *Ladnier v. State*, 878 So. 2d 926, 933 (¶27) (Miss. 2004).

¶11. A statement is hearsay when it "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). "Hearsay is not admissible except as provided by law." M.R.E. 802. But the following evidence is admissible:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to

4

whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness . . . .

M.R.E. 803(4).

¶12.    In denying Grant's motion in limine, the circuit court relied on *Valmain v. State*, 5 So. 3d 1079 (Miss. 2009).  In that case, the Mississippi Supreme Court held that "the identity of [a] child's sexual abuser was pertinent to treatment, [and] therefore reasonably relied upon by the treating physician, although the perpetrator was not a member of the child's household."  *Id*. at 1084 (¶19).  "[T]he paramount concern in treatment of sexual abuse is to ensure that a child is not returned to the environment that fostered, allowed, or permitted the abuse."  *Id*. at (¶20).  The Supreme Court noted that Paul Clark Valmain did not live in the child victim's home, but he frequently visited the family.  *Id*. at 1084-85 (¶21).  "Because [Valmain] would have access to the child in the future that would allow the sexual abuse to continue," the Supreme Court found that a nurse was not prohibited from testifying regarding the victim's mother's hearsay statements.  *Id*. at 1085 (¶21).

¶13.    Carter recommended "protective placement" of N.M.  Although Grant did not live in N.M.'s home, there was evidence that he was a frequent presence.  Grant's brother lived with N.M.'s mother, and they had two daughters together.  In other words, Grant's nieces were N.M.'s half-siblings.  There was evidence that Grant frequently took his nieces, N.M., and N.M.'s brother on outings.  Therefore, Grant's identity was pertinent to Carter's treatment of N.M., based on Carter's concern regarding the potential for further inappropriate contact

5

with Grant. We find that the circuit court did not abuse its discretion when it followed the Supreme Court's precedent in *Valmain* and allowed Carter to testify regarding N.M.'s statements during the examination.

## II.     Grant's Cross-Examination

¶14.    After N.M.'s mother filed a report, Grant voluntarily spoke to Investigators Mike Walter and Jonathan Rose with the Pearl Police Department. During his September 2011 interview, Grant identified his then-current girlfriend, and he listed his previous girlfriends. The prosecution called Investigator Rose during its case-in-chief, but he did not testify regarding Grant's responses when questioned about his girlfriends.

¶15.    After the prosecution rested its case-in-chief, Grant called British Manning as a witness. Briefly stated, she testified that she was dating Grant during May 2011, and she provided an alibi for Grant. While cross-examining Grant, the prosecution elicited the following exchange:

> Q.     Just so we're clear, you deny that you said your girlfriend was from Nevada. On September 23, 2011, when [investigators] asked you who your girlfriend was, did you say she's a black girl from Nevada?
>
> A.     Yes, sir. I'm sorry.
>
> Q.     So that's one girlfriend. You mentioned a Shannon[?]
>
> A.     A Shannon?
>
> Q.     Shannon, a girlfriend sometime in the past, named Shannon?
>
> A.     Yes, sir.

Grant's attorney objected and claimed the questions were irrelevant, but the circuit court overruled the objection. The prosecution continued:

Q. You talked to about a past girlfriend named Lucrecia or Crecia?

A. My baby['s] mother.

Q. Okay. You talked about a Shonda?

A. Yes, sir.

Q. You talked about a girl that you dated in 2010 in Pelahatchie that had a 17-year-old daughter?

A. Where are you going with this?

Q. Answer the question. Did you talk about -- did you tell detectives that you had a girlfriend in 2010 that had a 17-year-old daughter? Yes or no.

A. Yes, sir, I do believe.

Q. You told investigators that your previous girlfriend was 5'8", 5'9" and Caucasian, correct?

A. Yes.

Q. You told the investigator that the girlfriend prior to that was a Caucasian girl?

A. Yes.

. . . .

Q. You told police about the mother of one of your children[,] and based on the information you gave you didn't give a name[,] but it's either Jennifer Wright or Wanda Osborne, correct?

A. I don't have an Osborne.

Q.    Okay.  What about a Jennifer Wright?

A.    Yes.

Q.    Okay, that's the mother of your child even though you didn't name her, correct?

A.    Yes.

Q.    And you name the mother of your child that lives in Georgia?

A.    Lucrecia Jones.

Q.    Okay, you mentioned Linda Patrick?

A.    Yes.

Q.    And you mentioned Casey Frances?

A.    Yes.

Q.    And you mentioned 10 different women over the course of 58 minutes and the name British Manning never came up?

A.    Yes.

Q.    She came up zero times?

A.    Yes.

Q.    All right. You were asked and, in fact, you named Christen Caughlin; never came up, did it? On --

A.    That was the Caucasian.

Q.    Okay.  Okay.

A.    Stacey Frances, that was the other Caucasian.

Q.    Okay.  So you talked about 10 different women?

8

A.     Yes, sir.

¶16.   On appeal, Grant argues that the prosecution's line of questioning was irrelevant and prejudicial. According to Grant, his dating history had nothing "to do with the truth or falsity of N.M.'s allegations," and "[t]he prosecution used Grant's answers to these irrelevant questions solely to make him look bad to the jury." As mentioned above, we review the circuit court's decision for abuse of discretion. *Ladnier*, 878 So. 2d at 933 (¶27).

¶17.   Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Relevant evidence is admissible. M.R.E. 402. "If the evidence has any probative value at all, the rule favors its admission." M.R.E. 401 cmt. "Evidence to prove a collateral fact is relevant if the collateral fact has a tendency to prove or disprove an issue in the case." *Id*. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." M.R.E. 403.

¶18.   Grant concedes that "it may have been fair for the prosecution to elicit the fact that Grant had named numerous past girlfriends in order to highlight the fact that he never named British Manning as one of those girlfriends." Even so, Grant argues that "it was not relevant to elicit the races of [his] girlfriends, the fact that [he] had children with two of them, and that one of them had a seventeen-year-old daughter." There was no testimony that Grant was uninvolved in his children's lives, so it is unclear how the fact that he had two children could

9

be considered prejudicial. It is possible that some degree of prejudice could have existed in the jurors' minds regarding interracial dating or having children out of wedlock. But it was in the circuit court's discretion to find that whatever prejudice resulted was outweighed by Grant's omission of Manning's name while listing his girlfriends during the September 2011 interview. Manning's alibi testimony contradicted N.M.'s testimony. N.M. testified that she had never heard of Manning. Grant's omission of Manning's name tended to make it more probable that Manning's testimony was not credible. There is no merit to this issue.

### III.    Sufficiency of the Evidence

¶19.    Grant claims that there was insufficient evidence to support the jury's verdicts. In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nolan v. State*, 61 So. 3d 887, 893 (¶24) (Miss. 2011) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). All credible evidence consistent with the defendant's guilt will be accepted as true, together with all favorable inferences that may be reasonably drawn from the evidence. *Robinson v. State*, 940 So. 2d 235, 240 (¶13) (Miss. 2006) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)).

¶20.    Grant was convicted of two counts of sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(c) (Rev. 2014), which provides that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child at least fourteen

10

(14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child[.]" N.M. testified that she was fourteen years old when she performed oral sex on Grant twice and he performed oral sex on her once. "[T]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Torrey v. State*, 891 So. 2d 188, 192 (¶18) (Miss. 2004) (overruled on other grounds). It is irrelevant that N.M. consented. *See Bates v. State*, 879 So. 2d 519, 521-22 (¶5) (Miss. Ct. App. 2004). Grant testified that his birthday was July 10, 1979, so he was unquestionably more than thirty-six months older than N.M. Grant disputed N.M.'s version of events, but the jury believed N.M. The jury was responsible for resolving conflicts in the evidence and the credibility of witnesses. *Brown v. State*, 796 So. 2d 223, 227 (¶12) (Miss. 2001).

¶21. The fact that the jury found Grant not guilty of one charge has no impact on his two convictions. When a defendant charged in a multi-count indictment is convicted on some counts while acquitted of others, "the appellate inquiry is limited to a determination of whether the evidence is legally sufficient to support the counts on which a conviction is returned. What the jury did with the remaining counts is immaterial." *Edwards v. State*, 797 So. 2d 1049, 1058 (¶25) (Miss. Ct. App. 2001).

¶22. Finally, Grant notes that after the trial, N.M. signed an affidavit recanting her testimony. During the hearing on Grant's motion for a judgment notwithstanding the verdict or a new trial, N.M. testified: (1) Grant's brother was "like a dad" to her; (2) Grant's brother

11

asked her to sign the affidavit; (3) two other people talked to her about getting Grant out of prison; (4) Grant's brother was with her when she signed the affidavit; and (5) she did not read the affidavit before she signed it, but she knew it was intended to help Grant "get out of jail." However, N.M. also testified that she did not lie when she testified during Grant's trial. She said she signed the affidavit because she felt guilty because she consented to the acts that led to Grant's convictions.

¶23. Grant's brother testified that he hired a lawyer to draw up the affidavit, and the lawyer never spoke to N.M. before he drafted it. Grant's brother clarified that the lawyer "just typed it up." According to Grant's brother, he "told her she had to sign a[n] affidavit" and he "handed it to her and she signed it."

¶24. "The fact that a witness changes h[er] testimony after the trial does not necessarily entitle [one] to a new trial." *Howell v. State*, 989 So. 2d 372, 384 (¶33) (Miss. 2008). "As a general rule, recanted testimony is exceedingly unreliable, and is regarded with suspicion; and it is the right and duty of the court to deny a new trial where it is not satisfied that such testimony is true." *Id*. "A determination of whether . . . a new trial should be granted on recanted testimony is reviewed under an abuse of discretion standard." *Johnson v. State*, 70 So. 3d 262, 263 (¶6) (Miss. Ct. App. 2011). Based on N.M.'s testimony during the hearing, we find that the circuit court did not abuse its discretion when it denied Grant's posttrial motion. It follows that this issue has no merit.

    **IV.**    **Weight of the Evidence**

¶25. Finally, Grant claims the jury's verdicts were contrary to the overwhelming weight of the evidence. An appellate court will only disturb a verdict based on the weight of the evidence "when [the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). As we review this issue, we weigh the evidence in the light most favorable to the verdicts. *Id*.

¶26. We do not find that allowing the verdicts to stand would sanction an unconscionable injustice. As mentioned above, the jury is responsible for resolving conflicts in the evidence and the credibility of witnesses. *Brown*, 796 So. 2d at 227 (¶12). Furthermore, "[f]actual disputes are properly resolved by a jury and do not mandate a new trial." *Ealey v. State*, 158 So. 3d 283, 293 (¶31) (Miss. 2015). This issue has no merit.

¶27. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND II, SEXUAL BATTERY, AND SENTENCE OF TWO CONCURRENT TERMS OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS SUSPENDED AND FIFTEEN YEARS TO SERVE, FOLLOWED BY FIFTEEN YEARS OF POSTRELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.**