# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-01832-SCT

*LIONEL F. LADNIER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/1/2002 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM DAVIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/03/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER AND COBB, P.JJ., AND GRAVES, J.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Thirteen-year-old Anne Bates[1] accused Lionel F. Ladnier of fondling her while the

two were riding on a three-wheeler. Ladnier was convicted in the Circuit Court of Hancock

County of one count of touching a child under the age of sixteen for lustful purposes in

violation of Miss. Code Ann. § 97-5-23 (Rev. 2000), and sentenced to three years in the

custody of the Mississippi Department of Corrections. Ladnier appeals, contending that the

evidence was insufficient to support the verdict and that the circuit court erred by not

---

[1]A pseudonym for the minor victim.

granting a lesser-included simple assault jury instruction, and by excluding testimony regarding his sexual morality. We affirm.

**FACTS**

¶2. One autumn evening, thirteen-year-old Anne Bates was visiting her grandmother, when Anne and Ladnier, her grandmother's boyfriend, went riding on a three-wheeler. Anne drove the vehicle and Ladnier sat behind her. According to Anne, as they drove away from the house, Ladnier allegedly placed his hands inside of her bra and massaged her breast. When they returned to the house, Anne told her female cousin what had happened but did not immediately tell any adults of the incident.

¶3. The following day, Anne, Ladnier, Anne's grandmother, and Anne's cousin traveled to Texas to spend the Thanksgiving holidays. Anne testified that, when they returned, Ladnier once again allegedly tried to place his hands under her shirt while she was spending the night with her grandmother. Ladnier was also staying the night at her grandmother's house. Afterwards, Anne told her grandmother about the three-wheeler incident. Ladnier was arrested.

¶4. At trial, Anne testified that she was thirteen years old on November 20, 2000, and that Ladnier put his hands inside of her bra and massaged her nipple while they drove away from her grandmother's house on the three-wheeler. She stated that she was wearing a bra, tee shirt, and a pullover fleece top. She also stated that twenty minutes after getting off of the three-wheeler, she told her cousin that Ladnier had touched her. When asked why she did not immediately tell an adult about the three-wheeler incident, Anne responded that she was worried that "everything would go crazy, haywire, just a big mess." She also stated that she

2

did not want to ruin the holidays. As to the incident after returning from Texas, she testified that she was sitting at the computer when Ladnier approached her and asked if she had told anyone of the three-wheeler incident. When she replied that she had not told anyone, he attempted to raise her shirt. She testified that when she refused to let him raise her shirt, he asked her why she would not let him put his hands under her shirt when she had let him do it earlier. At this point, she began arguing with him, waking her grandmother.

¶5.     Anne's cousin testified that fifteen to twenty minutes after Anne rode the three-wheeler with Ladnier, Anne told her that he placed his hands inside of her bra. The cousin stated that Anne wanted to tell her grandmother about the incident but was afraid it would ruin the holidays.

¶6.     Anne's grandmother testified that the driveway Anne and Ladnier were riding on was very bumpy and that Anne liked to drive the three-wheeler at a high rate of speed. She also testified that she and others were in the yard while Anne and Ladnier were on the three-wheeler and that she could see them as they drove down the driveway. She stated that Anne did not seem upset when she got off of the three-wheeler.

¶7.     Anne's aunt testified that the driveway Anne and Ladnier were riding on was a rough dirt road. She also testified that she was in the yard while they were on the three-wheeler, and that she could see them from where she was standing. She also stated that, after she and her husband picked Anne up from her grandmother's house that night, Anne said that the whole thing was an accident. Anne's uncle also testified that Anne told him and her aunt that the three-wheeler incident was an accident.

3

¶8.    Ladnier testified that he was fifty-four years old.  He rode the three-wheeler with Anne because he thought the machine was dangerous and he helped her change gears when she was driving.  He denied touching Anne, but he did tell investigators that he "probably did" place his hand on Anne's bare breast.  He finally stated that he might have touched her because "you're bouncing on that [three]-wheeler, you don't know what's going on."  As to the night Anne accused him of touching her, he testified that he never touched Anne and that he was trying to poke her because he was always goosing people.

## DISCUSSION

### I.    WHETHER THE CIRCUIT COURT ERRED IN DENYING LADNIER'S MOTION FOR A DIRECTED VERDICT, MOTION FOR A NEW TRIAL OR FOR JNOV.

¶9.    To sustain a conviction under to Miss. Code Ann. § 97-5-23, the State must prove beyond a reasonable doubt that (1) the defendant was over the age of eighteen; (2) the child was under the age of 16; and (3) that the defendant touched the child with either his hands or another part of his body for the purpose of gratifying his lust.  The evidence shows that Ladnier was over the age of eighteen and that Anne was under the age of sixteen on the day of the three-wheeler incident.

¶10.    Ladnier contends that the State did not prove beyond a reasonable doubt that he was guilty of violating § 97-5-23.  He argues that there was no evidence that he touched Anne for the purpose of indulging his depraved licentious sexual desire and that there was no testimony which corroborated that the touching was anything more than accidental.

4

¶11. A motion for a directed verdict and a motion for a verdict notwithstanding the judgment "are predicated upon the idea that the evidence simply does not justify a verdict of guilty beyond a reasonable doubt." *Washington v. State*, 800 So. 2d 1140, 1144 (Miss. 2001). As this Court has stated,

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence -- not just that supporting the case for the prosecution -- in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*Mangum v. State*, 762 So. 2d 337, 341 (Miss. 2000).

¶12. The Court of Appeals has reversed a conviction of gratification of lust when the defendant pinched a child on the buttocks and kissed a child on the cheek. *Bradford v. State*, 736 So. 2d 464 (Miss. Ct. App. 1999). The issue before the court was whether the State presented sufficient proof to support a finding by the jury that Bradford sought to gratify his lust through his actions. The court found no case law which stated what was necessary to give rise to an inference that an undisputed act of touching was for the purpose of satisfying a defendant's sexual desires, but that there must be some probative evidence as to the purpose of the touching. The court held that evidence that the touching was for

5

purposes of satisfying lustful desires could arise from a description of the circumstances of the encounter itself:

> For example, touching in inappropriate parts of the child's body, overly demonstrative acts of affection, events occurring when the child is not fully clothed, or some evidence of sexual arousal by the defendant during the encounter, might be sufficient to draw a reasonable inference as to the improper purpose of the defendant's act.

*Id*. at 466. There was no evidence of an attempt to rub or grope the child in a sexually suggestive manner and no evidence in the record that indicated that Bradford's behavior was the type of behavior that the statute was intended to punish. *Id*.

¶13. To the contrary, the facts of the present case indicate that Ladnier's behavior was the type of behavior § 97-5-23 intended to punish. Anne testified that Ladnier massaged her nipple while on the three-wheeler the entire time they were riding. Ladnier's conduct was sufficient for the jury to reasonably infer that the touching was for purposes of satisfying his lustful desires. This argument is without merit.

¶14. Ladnier also argues that the verdict should be reversed because Anne's testimony was uncorroborated. In *Collier v. State*, 711 So. 2d 458, 462 (Miss. 1998), Collier was convicted after a child told her mother that he had fondled her. On appeal, Collier argued that the child's testimony was uncorroborated and unsubstantiated. Affirming Collier's conviction, we held as follows:

> Our case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized. The victim's physical and mental condition after the incident, as

6

well as the fact that the incident was immediately reported is recognized as corroborating evidence.

*Id.* (citing **Christian v. State**, 456 So. 2d 729, 734 (Miss. 1984)); **Inman v. State**, 515 So. 2d 1150, 1152 (Miss. 1987). In **Collier**, the child's mental state following the touching was consistent with one who had been fondled. There was testimony that when she returned from Collier's house, she had a "wild look" and immediately reported the incident to her mother.

¶15. In the present case, although Ladnier denied touching Anne and witnesses testified that they could see Anne and Ladnier on the three-wheeler, the jury heard testimony that at the time of the touching, Anne and Ladnier were traveling *away* from the house and could reasonably infer that even though people were in the yard, they would not be able to see whether Ladnier placed his hands on Anne's breast. Anne and her cousin both testified that Anne told the cousin twenty minutes after getting off the three-wheeler that Ladnier placed his hands inside her bra while on the three-wheeler and that Anne did not immediately tell anyone else of the incident because she thought the holidays would be ruined.

¶16. Although there were inconsistencies between Anne's testimony and that of other witnesses, issues of witness credibility and the weight to be accorded a witness's testimony are matters to be resolved by the trier of fact, in this case, the jury:

> Our case law is axiomatic on the proposition that the jury is arbiter of the credibility of testimony. "It is, of course, within the province of the jury to determine the credibility of witnesses. . . ." "The conflict between the testimony of the appellant and the prosecutrix was properly resolved by the jury." "We are asked to reverse this case on the grounds that there are inconsistencies and contradictions in her testimony. If this be true, it would still be a question for the jury." In the

7

> instant case, any inconsistencies found in C.H.'s testimony go [sic] the weight and credibility of her testimony, clearly a jury question. *In addition, C.H.'s testimony was not at all inconsistent on the issue at the heart of this matter--Collier's fondling of her*.

*Collier*, 711 So. 2d at 462-63 (emphasis added) (citations omitted).

¶17.   Based on this evidence, we find that the circuit court did not err in denying Ladnier's motions for directed verdict and for judgment notwithstanding the verdict.

¶18.   Ladnier also contends that the circuit court erred by not granting his motion for a new trial.  He contends that if we finds the evidence against him legally insufficient to support the verdict it should also find that the verdict is contrary to the overwhelming weight of the evidence.  As to the weight of the evidence, we will order a new trial "[o]nly where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Mangum v. State*, 762 So. 2d at 342 (quoting *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)).  Based on the evidence, we cannot say that the jury's verdict was an unconscionable injustice.  This argument is without merit.

## II.   WHETHER THE CIRCUIT COURT ERRED BY NOT GRANTING A LESSER-INCLUDED OFFENSE INSTRUCTION.

¶19.   Ladnier asserts that it was error for the circuit court to refuse his proffered instruction on the lesser-included offense of simple assault, and that, though he admitted that he might have touched Anne's breast, it was not done to satisfy any licentious sexual desire.  The State argues that there is no evidence to warrant a lesser-included offense jury instruction.

¶20.   Mississippi's law is well settled as to appellate review of a circuit court's grant or denial of jury instructions:

Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

*Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991) (citations omitted).

¶21.    To be entitled to a lesser-included offense instruction, Ladnier must point to evidence in the record from which a jury could reasonably find him not guilty of the crime with which he was charged and at the same time find him guilty of the lesser included offense. *Tolliver v. State*, 600 So. 2d 186, 192 (Miss. 1992).

¶22.    A person is guilty of simple assault if he attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or attempts by physical menace to put another in fear of imminent serious bodily harm. Miss. Code Ann. § 97-3-7. A person is guilty of fondling a child if he is over the age of eighteen, the child was under the age of sixteen, and if the defendant touched the child with either his hands or another part of his body for the purpose of gratifying his lust. *Id.* § 97-5-23.

¶23.    In *Goodnite v. State*, 799 So. 2d 64 (Miss. 2001), Goodnite was convicted for touching a child for lustful purposes and sexual battery. He performed fellatio on an eight-year-old and pinched a six-year-old's vagina. On appeal, Goodnite asserted that it was error for the circuit court to refuse a lesser-included jury instruction of simple assault as to his pinching the six-year-old.

9

¶24.   Discussing the State's argument that there was no evidence to warrant a lesser-included instruction and that simple assault is not a lesser-included offense of § 97-5-23(1), we noted that fondling involves an offensive touching which denotes sexual gratification which, while emotionally uncomfortable, does not necessarily cause bodily injury. *Id*. at 68. We found that there was no evidence to warrant finding Goodnite guilty of simple assault which involved an attempt to cause bodily injury and concluded "that a reasonable jury viewing the evidence favorable to Goodnite could not harbor a doubt that the pinch was for anything other than a lustful purpose." *Id*. at 69.

¶25.   Here, there was no evidence to support a jury instruction on simple assault. There is nothing that indicates Ladnier attempted to cause bodily harm. Thus, the circuit court did not err in refusing to offer a simple assault jury instruction.

### III.    WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO ALLOW OPINION TESTIMONY REGARDING LADNIER'S SEXUAL MORALITY.

¶26.    At trial, Ladnier's ex-wife, Linda Jenkins, testified that she was married to Ladnier for twenty years, had been divorced from him for nine years, and that, in her opinion, he had a reputation of being truthful. The jury was excused and Ladnier proffered Jenkins's testimony as to his reputation for sexual morality and her opinion of his sexual morality. When asked her opinion about his sexual morality, she stated that in her opinion he would not harm a young person. When asked if she ever had an opportunity for anyone to say anything about his sexual morality, she replied that she had not. She then stated that she and Ladnier were chaperones for their children's high school activities and that she believed that he would never harm a young person.

¶27. The circuit court excluded the proffered testimony, finding that it was inadmissible character evidence, that Jenkins gave only her personal opinion as to Ladnier's sexual morality, and she offered nothing as to his general reputation for sexual morality in the community. "The standard of review regarding admission [or exclusion] of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court 'will not reverse unless the error adversely affects a substantial right of a party.'" *Whitten v. Cox*, 799 So. 2d 1, 13 (Miss. 2000) (citing *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (Miss. 1999)).

¶28. An accused has an absolute right to put on character evidence as to a pertinent trait. 1 Wigmore, Evidence, § 56 (3d ed. 1940). Indeed, M.R.E. 404 allows a criminal defendant to put on evidence of his good character.[2] Whether a proposed testimony is pertinent and therefore open to exploration via character evidence depends on the nature of the case. 3 Crim. Prac. Manual § 56:3. The nature of the trait in question determines the time period about which the witness would testify, e.g., the time of trial for veracity, the time of the alleged incident for honesty or peacefulness. *Id.*

¶29. Mrs. Jenkins's testimony regarding Ladnier's reputation for sexual morality was properly excluded because the testimony was based on incidents which had occurred

---

[2]Rule 404 provides in pertinent part as follows:

(a)    Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

        (1)    Character of Accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same; . . .

approximately nine years prior to the date of the incident. As pointed out above, testimony based on facts which occurred at "the time of the alleged incident" would be admissible, but facts which occurred nine years prior are too remote to be relevant.

## CONCLUSION

¶30. Finding no merit in Ladnier's assignments of error, we affirm Ladnier's conviction for touching a child for lustful purposes and sentence of three years in the custody of the Mississippi Department of Corrections.

¶31. **CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**